WILLIAM M. WILDY v. Doe, ex dem. MOSES H. BONNEY.

At common law, the alienation by a husband, who was seized in the right of his wife, worked a discontinuance of the wife's estate, till the statute of 32 Hen. 8, c. 28, which provided, that no act of the husband alone shall work a discontinuance of, or prejudice, the inheritance or freehold of the wife; but after his death, she, or her heirs, may enter on the land; and this provision has been incorporated in the statute law of this State.

A tenant shall not deny the title of his landlord.

B. was no party to the lease of the land, and at the time it was made, had no title to the land; and he could claim no more than H. himself could convey; and he was bound by every estoppel which bound H.; and the tenant in possession is bound by the same estoppel.

The wife's title vested on the death of her husband, and the possession of H., was only an enjoyment of her title in reversion, and all claiming under him. Held, that H. had no interest in the land which could be sold.

In error from the circuit court of Yazoo county; Hon. R. C. Perry, judge.

This was an action of ejectment brought by the lessor of defendant in error, to recover of plaintiff in error a tract of land in Yazoo county. The cause was tried at the May term, 1850, of the Yazoo circuit court, and plaintiff below (Bonney) proved first, possession of the *locus in quo* by defendant at the time of suit brought; and he next proved, that William Hall, deceased, purchased the lands from the United States in his lifetime, and that he left at his death five heirs, to whom this, with his other real estate, descended, to wit, A. C. Hall, Rhoda Pierce, Tabitha Russell, John C. Hall, and S. S. Hall. He offered to read in evidence, a deed from Marcus Pierce and his wife Rhoda, to A. C. Hall, for their interest in the lands of William Hall, of which the land in controversy is part, which deed was objected to by defendant's attorney, and excluded by the court, on the ground that it does not appear that Rhoda Pierce acknowledged the same on a private examination apart from her husband; and plaintiff proved, that Marcus Pierce and his wife Rhoda had several children alive, and again offered said deed as the deed of Pierce alone, and it was read to the jury

Wildy *v.* Doe, ex dem. Bonney.

as such. The plaintiff below then offered in evidence, the proceedings of the probate court of Yazoo county, regular in all respects, by which it appears that the lands of William Hall (the ancestor) were divided into five shares, and numbered accordingly; and that in the division, A. C. Hall was "to take for his own share and Mrs. Pierce's, lots 2 and 5," and that lot No. 2 (the *locus in quo*) lies in the Yazoo valley, and lot No. 5 lies in the hills four miles off; and he then read in evidence a judgment in favor of Marsh, Cothran, & Neill, against A. C. Hall, on which execution issued, and was levied on lot No. 2, which was sold and bought by Bonney, the lessor of plaintiff, and deed made to him by sheriff, which judgment, execution, sale, and deed were in all respects regular. Plaintiff below also proved, that A. C. Hall was in possession of the premises at the time of sale; that defendant Wildy, afterwards, by a verbal contract with said Hall, took possession thereof, and agreed to pay him rent therefor, and return the possession when demanded.

For defendant it was proved, that $250, the sum allotted by commissioners to make lot No. 5 equal to lot No. 2, was paid to A. C. Hall. It was further proved, that Marcus Pierce died in 1844. Defendants below then read in evidence a deed from Rhoda Pierce to William Hall and Laurena Wildy, wife of defendant, for the land in controversy. The reading of this deed was objected to by plaintiff's counsel, on the ground, that at the time it was executed, the land was adversely held; but the objection was overruled by the court. This was all the testimony in the cause.

The plaintiff then asked the following instruction to the jury: "That if they believe from the evidence, that A. C. Hall was in possession of the land in controversy at the time of the sale of the same, by virtue of the execution in favor of Marsh, Cothran, & Neill, against him; and Wildy took possession of the land by a contract between Hall and Wildy. Wildy is a tenant of plaintiff, and cannot set up a title in any one else, to defeat the plaintiff; and that the law is for the plaintiff, and they will so find." Which instruction the court gave.

The defendant then asked the following instruction: "That

if they believe from the evidence, that at the commencement of this suit the legal title to the disputed premises was in William Hall and Laurena Wildy, the wife of defendant, and that their title was acquired after the sale by the sheriff, and after the defendant had taken possession under his agreement with A. C. Hall; then the law is for the defendant, and they will so find." Which instruction the court refused to give.

A verdict was rendered for the plaintiff in the court below, and defendant prayed a writ of error to this court.

*Barrus* and *Dougharty*, for appellant.

Wildy took possession of the land in controversy, by consent of Hall. The legal title of the land at the commencement of this suit was in William Hall and Laurena Wildy. The proof shows, that in the division of the land by the commissioners, lot No. 2, the land in controversy, was allotted to Rhoda Pierce, the vendor of appellant; that Hall had no title or right to the same, and, therefore, the levy and sale, by the sheriff, of Hall's interest in said land, was void.

By sale of Hall's interest (if he had any) by the sheriff, the relation of landlord and tenant no longer existed between him and Wildy, who could set up an adverse title subsequently acquired. *Robinson* v. *Parker*, 3 S. & M. 118; *Henderson* v. *Overton*, 2 Yer. 394. The proof shows, that lot No. 2 was drawn by Rhoda Pierce, the vendor of defendant; it was therefore competent for Wildy to show, that at the time of the sale of said land under execution against Hall, he had no title thereto, and that no interest vested in the plaintiff by virtue of said sale. 2 U. S. Digest, 152, cites *Colvin* v. *Baker*, 2 Barb. R. 206.

Wildy might also show, that the title of Hall had expired. 3 U. S. Digest; *Doe* v. *West*, 1 Blackf. 133. Same doctrine laid down in Taylor's Land. and Ten. 337; *Marley* v. *Bodges*, 5 Yer. R. 217; *Willisan* v. *Watkins*, 3 Peters, R. 43.

Wildy could protect his possession, by showing a better title out of Hall, lessor of Bonney. *Miller* v. *Holt*, 1 Tenn. R. 308.

The doctrine is not denied, that a tenant will not be per-

mitted to deny the title of his landlord. But the relation must exist as at the time of the lease. In this case, if Wildy was ever the tenant of Hall, that relation was put an end to by the sale of Hall's right under execution. Therefore he ceased to be the tenant of Hall; not, it is true, by the act of his landlord, but by force and operation of law. Wildy had then a right to set up title out of Hall, in defence. *Binney* v. *Chapman*, 5 Pick. 128; *Clark* v. *Byne*, 13 Vesey, 383; *Cawtan* v. *Williams*, 9 Ib. 107.

The case of *Jackson* v. *Rowland*, reported in 6 Wend., seems to be a case in point. In that case, defendant took possession of the premises as tenant of Day, under an agreement to pay rent. In ejectment, he produced in evidence a deed from sheriff, it having been sold under execution, and bought by defendant. The court held, that defendant could set up sheriff's deed. 6 Wend. 666; *Jackson* v. *Harder*, 2 Johns. 202; Ib. 75; 4 Ib. 176.

*E. C.* and *Geo. B. Wilkinson*, for appellee, filed no brief in the case.

Mr. Justice FISHER delivered the opinion of the court.

This was an action of ejectment tried at the May term, 1850, of the circuit court of Yazoo county, in which the plaintiff below obtained a verdict and judgment. A motion was made for a new trial, which was overruled by the court, when a bill of exceptions, containing the testimony given on the trial, was taken.

The land in controversy is shown to have been part of the inheritance of Mrs. Pierce, wife of Marcus Pierce. They, on the 29th of June, 1841, conveyed by a quitclaim deed, the land to one A. C. Hall. This deed contained no separate acknowledgment as to the wife, and, therefore, only passed the interest which the law, by virtue of the marriage, vested in the husband. Pierce died sometime during the year 1844. Hall, after Pierce's death, still continued in possession, and while thus in possession, the sheriff of Yazoo county having an execution against him, levied on and sold the land by·virtue of

the same, when it was purchased by Moses H. Bonney, the plaintiff's lessee. After this purchase, Hall made a verbal lease of the land to Wildy, the plaintiff in error, who was to pay rent to Hall, and return to him possession of the land. On the 6th of March, 1849, before this action was commenced, Mrs. Pierce conveyed the land to Laurena Wildy, wife of the plaintiff in error, and to one William Hall.

The court, at the instance of the counsel for the plaintiff below, instructed the jury, that Wildy, having leased from A. C. Hall, could not dispute his title, and could not set up a title in a third person.

The first question presenting itself for adjudication is, What interest had Hall in the land at the time of the sale by the sheriff and the purchase by Bonney? " By the common law, the alienation of· a husband who was seized in the right of his wife, worked a discontinuance of the wife's estate, till the statute of 32 Henry 8, c. 28, provided that no act of the husband alone shall work a discontinuance of, or prejudice, the inheritance or freehold of the wife; but that after his death, she or her heirs may enter on the lands in question." 3 Bl. Com. 172.

This provision of the English statute has been incorporated into the statute law of this State. Rev. Code, 450. By it the interest which A. C. Hall acquired under the deed, was no greater than that which the law vested in the husband, and his conveyance could have no operation to defeat either the right of property or of possession which on his death reverted to the wife. Hall's title to the land was terminated by the death of Pierce, and his possession thereafter was only such as the person taking in reversion might permit him to enjoy. It is said by the counsel for the plaintiff in error, that Hall, after the death of the husband, was a tenant at sufferance of the wife. Whether he was, according to correct definition, such tenant or not, it is clear that his interest was not greater; and if he did not hold possession as a tenant at sufferance, which is said to be a possession enjoyed by the laches of the landlord, he held by deforcement, which is any species of wrong whatsoever whereby he that has the right to the freehold is kept out of pos-

session, and applies mainly to a case where the party has the right of property, but never had the actual possession under that right. 3 Bl. Com. 173. In this case the right of property and right of possession were complete in Mrs. Pierce at the time of the purchase by Bonney. These rights were such that she could sell and convey them, while Hall, or those claiming under him, were in possession. *Day & Prentiss* v. *Cochran's Heirs*, 2 Cushm. 261. It has been clearly shown that Hall had, at the date of the execution sale, no estate whatever in the land. His interest was only such as could be enjoyed by a tenant at sufferance. Such interest is not capable of transfer or transmission. 4 Kent, 117. The sheriff's deed could convey no more than Hall's own deed could, which, under the authority, could convey nothing.

It is thus clearly shown, that no title whatever passed by the sheriff's deed to Bonney. But it is said that Hall, after the execution sale, having made a lease to Wildy, that he (W.) is estopped to deny the title of his landlord, and that he (Wildy) is in law the tenant of Bonney. It is a very general rule of law, that the tenant shall not deny the title of his landlord. The relation of landlord and tenant is created by contract. Bonney was, in fact, no party to the lease; and if he be a party by operation of law, it must be because he, at the time it was made, had the title to the land, and therefore the lease was a fraud on his rights. We have shown that he had no title whatever. He could claim no more than Hall himself could convey, and was bound by every estoppel which bound Hall. What, then, was Hall's attitude? By taking a deed conveying so much of the wife's inheritance as the marriage vested in the husband, he admitted her title in reversion if she survived him. This Hall will not be allowed to deny. The purchaser claiming under him at execution sale, and the tenant in possession, are bound by the same estoppel. Her title vested on the death of the husband, and the possession of Hall and all claiming under him, was only an enjoyment of her title in reversion, and to that extent a wrong committed on her rights; and not to allow the defendant below to show that the person in reversion had transferred her title, would be denying to her the right to

sell. If she had the right to sell, the party purchasing had the right to enjoy the land purchased. And, moreover, it is impossible to permit Bonney to enjoy any interest whatever in the land, unless it be an interest carved out of the estate after it vested in reversion in Mrs. Pierce. Hall had no interest to sell, or which could be sold. His possession was only the enjoyment of her title, either by laches on her part, or by wrong on his part. There is no other but her title shown in controversy.

We are of opinion that the court below erred in the instruction to the jury, and therefore reverse the judgment and remand the cause.